[Nos. H001160, H001161. Sixth Dist. Apr. 29, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
GEORGE BROWN III, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Ronald E. Niver, Thomas A. Brady and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Appellant.

D. Michael Lawrence, Public Defender, and Jonathan P. Siegel, Deputy Public Defender, for Defendant and Respondent.

OPINION

**CAPACCIOLI, J.**—Defendant George Brown III was accused by information of being an ex-felon in possession of a firearm (Pen. Code, § 12021, subd. (a)). Defendant's motion to set aside the information pursuant to Penal Code section 995 was granted by the superior court on the ground the evidence of defendant's guilt was unlawfully obtained. Thereafter, the superior court ruled that the previously suppressed evidence could not be used to revoke defendant's probation for earlier convictions of possession of marijuana for sale (Health & Saf. Code, § 11359). The People appeal from both judgments. The two cases have been consolidated on appeal.[1]

## BACKGROUND

On April 3, 1985, at approximately 7 p.m., defendant was stopped by Seaside Police Officer Charlie Sammut for making an illegal U-turn. Defendant was the driver of the vehicle and another individual was in the passenger seat.

Officer Sammut asked defendant for his identification. Defendant provided the officer with his true name, but said he had no identification with him. The officer obtained defendant's birth date and radioed communications for a check on the status of defendant's driver's license and the existence of any outstanding warrants or search and seizure waivers. Communications advised that defendant had a valid driver's license, there were no outstanding warrants, and that defendant was subject to a search and seizure waiver. Officer Sammut then issued defendant a traffic citation.

When the officer inquired whether defendant knew he had a search and seizure waiver, defendant answered in the affirmative. After confirming the continuing validity of the waiver through the sheriff's warrant control department, Officer Sammut asked defendant and his passenger to step out of the car, then searched the automobile and found a .38 Smith and Wesson along with some live ammunition.

Officer Sammut made the decision to search the vehicle upon discovering the search and seizure waiver. He had no suspicion of any ongoing criminal activity.

---

[1] All further statutory references are to the Penal Code.

## DISCUSSION

In *People* v. *Mason* (1971) 5 Cal.3d 759 [97 Cal.Rptr. 302, 488 P.2d 630] (disapproved on other grounds in *People* v. *Lent* (1975) 15 Cal.3d 481 [124 Cal.Rptr. 905, 541 P.2d 545]), our Supreme Court approved a condition of probation which required a probationer to submit to search and seizure with or without a search warrant. ■ "[P]ersons conditionally released to society, such as parolees [or probationers], may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. [Citations.] Thus, a probationer who has been granted the privilege of probation on condition that he submit at any time to a warrantless search may have no reasonable expectation of traditional Fourth Amendment protection. [¶] [ ] [W]hen [a] defendant in order to obtain probation specifically agree[s] to permit at any time a warrantless search of his person, car and house, he [has] voluntarily waived whatever claim of privacy he might otherwise have had." (*Id.* at pp. 764-766, fn. omitted.) The holding of *Mason* has been interpreted by at least one court to mean "[t]hat a valid probation search need not be founded on any report, or suspicion, or belief of continued misconduct." (*People* v. *Turner* (1976) 54 Cal.App.3d 500, 507 [126 Cal.Rptr. 652].)

■ In granting defendant's section 995 motion in this case, the superior court held that "there must be some reason, even though it's a suspicion, prior to [invoking] the search and seizure waiver."[2] The court's ruling was based on a line of cases, cited by defendant, which have attempted to limit *Mason* by requiring some type of conduct on the part of the probationer which reasonably suggests criminal activity in order to "trigger" the waiver and hence the search. (*People* v. *Guerrero* (1978) 85 Cal.App.3d 572, 581-582 [149 Cal.Rptr. 555]; *People* v. *Bremmer* (1973) 30 Cal.App.3d 1058 [106 Cal.Rptr. 797].)

The People argue that the latter cases were incorrectly decided. We agree.

First, we have difficulty squaring the holding of the cases cited by defendant with the rules announced in *Mason*. Nowhere in *Mason* does the court require some type of conduct which is reasonably suggestive of criminal activity as a precondition to search where there has been a search waiver

---

[2]Although the exact language of the waiver was not introduced into evidence at the preliminary hearing, the probation order is included in the record of these consolidated appeals. The order, inter alia, required defendant to "[p]ermit the search of his person, car, personal effects, or place of residence, night or day, without the necessity of a search warrant, at the direction of the Probation Officer or any peace officer."

by the probationer. ■ Defendant, by accepting probation with a condition of a search waiver, simply did not have a reasonable expectation of privacy. That is precisely the point of the condition. Defendant's Fourth Amendment protections are waived, so long as the search is not carried out in an unreasonable manner. (*People* v. *Mason, supra,* 5 Cal.3d 759, 765, fn. 3.) It is significant to note, however, that *Mason* dealt with reasonableness in the *manner* of the search rather than reasonableness in the *justification* for the search. Taken in context, the *Mason* court was referring to situations, unlike that in the instant case, where probation conditions are used to harass.

■ Moreover, to restrict warrantless probation searches to those situations where the probationer has engaged in conduct reasonably suggestive of criminal activity would render the probation order superfluous and frustrate its acknowledged purpose, i.e., "to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation. . . . 'The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with the terms of probation; to determine not only whether he disobeys the law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of the supervision given the defendant and his amenability to rehabilitation.' [Citation.]" (*Id.* at pp. 763-764.)

Finally, we wish to point out that we are cognizant of our Supreme Court's recent holding in *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251], but find the facts of that case distinguishable. In *Burgener,* the defendant, who had been sentenced pursuant to the determinate sentencing law, was released on parole pursuant to an agreement which contained a search and seizure waiver.[3] On appeal, he challenged a search of his residence which had been authorized by his parole agent. ■ The Supreme Court held that such searches may be justified only if they are necessary for effective parole supervision: "If a search is to have a parole supervision purpose therefore it must be based on information which leads the parole agent who conducts or authorizes the search to believe that the parolee has violated the law or another condition of his parole, or is planning to do so." (*Id.* at p. 533, fn. omitted.) ■ "[T]he appropriate standard of reasonableness to justify a parole search is a reasonable suspicion on the part of the parole officer that the parolee is again involved in criminal activity, or has otherwise violated his parole, and that the search may turn up evidence of that activity, or that evidence of a proposed future violation by the parolee will be uncovered. That suspicion must of course be based on articulable

---

[3]Upon his parole, Burgener signed a "notice and conditions of parole" which stated: " 'You and your residence and any property under your control may be searched without a warrant by any agent of the Department of Corrections or any law enforcement officer.' " (*Id.* at p. 529, fn. 10.)

facts which together with rational inferences from those facts warrant objectively reasonable suspicion. [Citation.]" (*Id.* at p. 535.) The search of Burgener's residence met the requisite standard and was therefore upheld.

However, as *Burgener* noted, the Board of Prison Terms is without discretion to grant or withhold parole to a prisoner who has served a determinate term. Similarly, the prisoner has no right to reject release on parole. Although the board is required to revoke parole if the prisoner does not sign the parole agreement, "the parolee's acceptance of parole under the determinate sentence law *is in no sense pursuant to a voluntary agreement by which he has waived his right to privacy in exchange for release on parole.*" (*Id.* at p. 529, fn. 12; italics added.)

Contrary to the situation in *Burgener,* this defendant entered into a *voluntary* agreement whereby he waived his right to privacy in exchange for the privilege of being released on probation. Unlike Burgener, this defendant had every right to refuse to accept the terms and conditions of probation proffered by the court. (Cf. *People* v. *Atwood* (1963) 223 Cal.App.2d 316, 323 [35 Cal.Rptr. 831].) Having consented thereto, defendant voluntarily relinquished whatever claim of privacy he otherwise would have had. (Cf. *People* v. *Mason, supra,* 5 Cal.3d 759, 766.)

Accordingly, we conclude that the superior court erred in ruling that the search at issue here was unlawful. As our determination is dispositive, we do not reach the People's remaining contention concerning the admissibility of the seized evidence at a hearing to revoke defendant's probation.

The orders granting defendant's section 995 motion and denying the petition to revoke defendant's probation are reversed and the causes remanded to the superior court for further proceedings consistent with the views expressed herein.

Agliano, P. J., and Brauer, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 13, 1987.